UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PNC BANK,

        Plaintiff,

v.                                                        Case No: 6:14-cv-2000-Orl-28KRS

DELPHINI INDUSTRIAL PARK AT
NORTHSTAR, LLC, DELPHINI
CONSTRUCTION COMPANY,
KENNETH M. DELP, II, and DELPHINI
INDUSTRIAL PARK AT NORTHSTAR
CONDOMINIUM OWNERS
ASSOCIATION, INC.,

        Defendants.

## ORDER

This diversity case is before the Court on the following motions filed by Plaintiff, PNC Bank: Motion for Final Judgment on the Pleadings (Doc. 25); Motion for Entry of Default Final Judgment (Doc. 26); Motion for Appointment of Master to Conduct Foreclosure Sale (Doc. 35); and Motion for Leave to File Original Promissory Note (Doc. 36). As set forth below, the Motion for Appointment of Master is denied but the other three motions are granted.

**I.    Factual and Procedural Background**

In January 2006, Florida Choice Bank made a loan of $2.1 million to Defendant Delphini Industrial Park at Northstar LLC ("Delphini Industrial"), and Delphini Industrial executed a promissory note evidencing that loan. (Compl., Doc. 1, ¶ 17; Note, Ex. 2 to

Compl.). The loan was secured by a mortgage on property located in Seminole County, Florida; by a Collateral Assignment of Leases and Rents; and by personal and other property as reflected in a Security Agreement and UCC-1 Financing Statements. (Compl. ¶¶ 18-22; Mortgage, Ex. 3 to Compl.; Assignment of Rents, Ex. 4 to Compl.; Security Agreement, Ex. 5 to Compl.; UCC-1 Financing Statements, Exs. 6 & 7 to Compl.). Defendant Kenneth M. Delp ("Delp") and Defendant Delphini Construction Company ("Delphini Construction") executed guaranties of Delphini Industrial's obligations under these documents. (Compl. ¶¶ 23 & 25; Guaranties, Exs. 8 & 9 to Compl.).

From 2006 to 2014, the lending arrangement was modified several times.[1] The last modification occurred in February 2014, when Delphini Industrial executed a Renewal and

---

[1] In January 2008, Delphini Industrial executed a Change in Terms Agreement (Ex. 11 to Compl.) and a Modification of Mortgage (Ex. 12 to Compl.). (Compl. ¶¶ 28-29). At that time, Delp and Delphini Construction again executed guaranties, (Compl. ¶¶ 30-33; Exs. 13 & 14 to Compl.), and Delphini Industrial executed a Business Loan Agreement, (Compl. ¶ 34; Ex. 15 to Compl.). In December 2009, Delphini Industrial executed another Change in Terms Agreement. (Compl. ¶ 36; Ex. 17 to Compl.). In February 2011, Delphini Industrial executed a Renewal Note in the amount of $1,893,839.00. (Compl. ¶ 37; Ex. 18 to Compl.). To secure payment of the Renewal Note, in February 2011, Delphini Industrial, Delp, and Delphini Construction executed a Mortgage and Loan Modification Agreement. (Compl. ¶ 38; Ex. 19 to Compl.). Also in February 2011, Delp and Delphini Construction executed guaranties. (Compl. ¶¶ 39-42; Ex. 20 & 21 to Compl.). Delp also executed a Wage Garnishment Consent (Ex. 22 to Compl.) at that time. (Compl. ¶ 43).
    In August 2011, Delphini Industrial executed another Renewal Note in the amount of $1,825,364.11. (Compl. ¶ 44; Ex. 23 to Compl.). Also in August 2011, Delphini Industrial, Delp, and Delphini Construction executed a Mortgage and Loan Modification Agreement. (Compl. ¶ 45; Ex. 24 to Compl.).
    In February 2012, Delphini Industrial executed another Renewal Note in the amount of $1,757,108.97. (Compl. ¶ 46; Ex. 25 to Compl.). To secure that Renewal Note, Delphini Industrial, Delp, and Delphini Construction executed a Mortgage and Loan Modification Agreement. (Compl. ¶ 47; Ex. 26 to Compl.).
    In February 2014, Delphini Industrial executed a Renewal and Restated Term Note in the amount of $1,461,610.37. (Compl. ¶ 50; Ex. 28 to Compl.). To secure that Renewal Note, Delphine executed a Real Estate Documents Modification Agreement. (Compl. ¶ 51; Ex. 29 to Compl.). Additionally, Delp and Delphini Construction executed guaranties,

Restated Term Note in the amount of $1,461,610.37. (Compl. ¶ 50; Ex. 28 to Compl.). Delp and Delphini Construction also executed guaranties at that time. (Compl. ¶¶ 52-55; Exs. 30 & 31 to Compl.).

On April 11, 2008, Florida Choice Bank merged into RBC Bank (USA). (Compl. ¶ 35; Articles of Merger, Ex. 16 to Compl.). RBC Bank was merged into PNC effective March 2, 2012. (Compl. ¶ 48; Certificate of Merger, Ex. 27 to Compl). PNC is the holder of the loan documents at issue. (Compl. ¶ 5).

Delphini Industrial defaulted under the loan documents by failing to make required payments in 2014, by failing to pay 2013 real estate taxes when due, and by failing to furnish financial information when requested. (Compl. ¶¶ 63-65). In October 2014, PNC sent a demand letter to Delphini Industrial accelerating the balance due and declaring the balance immediately due and payable. (Id. ¶ 67; Demand Letter, Ex. 33 to Compl.). Delphini Industrial did not make payment as demanded. (Compl. ¶ 67).

On December 3, 2014, PNC filed this lawsuit against Delphini Industrial, Delphini Construction, Delp, and Delphini Industrial Park at Northstar Condominium Owners Association, Inc. ("Condo Association").[2] In its Complaint, PNC alleges six counts: breach of note against Delphini Industrial (Count I); mortgage foreclosure against all Defendants (Count II); foreclosure of security interest in leases and rents against all Defendants (Count III); foreclosure of security interest in personal property against all Defendants (Count IV);

---

(Compl. ¶¶ 52-55; Ex. 30 & 31 to Compl.), and Delp again executed a Wage Garnishment Consent, (Compl. ¶ 56; Ex. 32 to Compl.).
   [2] As explained in the Complaint, Condo Association "may have or claim some interest in the Mortgaged Property." (Compl. ¶ 82).

3

breach of guaranty against Delp (Count V); and breach of guaranty against Delphini Construction (Count VI).

After the Condo Association, Delphini Construction, and Delphini Industrial failed to respond to the Complaint, the Clerk entered defaults against them upon motions by PNC. (See Docs. 13, 14, 21, 22, 23, & 24). Delp, appearing *pro se*, filed an Answer (Doc. 20) to the Complaint and has not been defaulted. Now before the Court are PNC's Motion for Final Judgment on the Pleadings (Doc. 25) against Delp—to which Delp has not responded—and PNC's Motion for Entry of Default Final Judgment (Doc. 26) against the other three Defendants.

## II. Motion for Final Judgment on the Pleadings (Doc. 25)

### A. Legal Standards

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "'Judgment on the pleadings is proper when no issues of material fact exist[] and the moving party is entitled to a judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts.'" Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 965 (11th Cir. 2014) (quoting Cunningham v. Dist. Attorney's Office for Escambia Cnty., 592 F.3d 1237, 1255 (11th Cir. 2010)). In ruling on a motion for judgment on the pleadings, a court "may also consider documents attached to the plaintiff's complaint if they are (1) central to the plaintiff's claim and (2) undisputed." Bank of Camilla v. St. Paul Mercury Ins. Co., 531 F. App'x 993, 994 (11th Cir. 2013) (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).

"In determining whether a party is entitled to judgment on the pleadings, [the court] accept[s] as true all material facts alleged in the non-moving party's pleading, and [the

court] view[s] those facts in the light most favorable to the non-moving party." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." Id.

### B. Discussion

Federal Rule of Civil Procedure 8(b)(6) provides that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Here, Delp did file an Answer (Doc. 20). Although *pro se* filings are to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation and citation omitted), Delp's Answer—even liberally construed—does not deny any of the Complaint's allegations, either specifically or generally.[3] Here, there is no dispute of fact from "competing pleadings." PNC has established entitlement to judgment as a matter of law against Delp based on the substance of the pleadings and attached undisputed documents. The claims against Delp are addressed in turn.

#### 1. Breach of Guaranty (Count V)

Count V of the Complaint alleges a claim against Delp for breach of guaranty. This claim is in the nature of a breach of contract claim, and such a cause of action "arises upon default and a subsequent refusal to pay by the guarantor." Brunswick Corp. v. Creel, 471 So. 2d 617, 619 (Fla. 5th DCA 1985).

PNC alleged in the Complaint that Delphini Industrial defaulted on the note and that Delp refused to pay on the Guaranty. (Compl. ¶¶ 71, 73-74, 99-101). Delp has not denied

---

[3] Instead, in his Answer Delp explains his dire financial straits and his efforts to sell "Northstar" while acknowledging that "Florida Choice lent [him] 2.1 million." (Doc. 20 at 2).

5

these allegations, and thus they are deemed admitted. There is no dispute of material fact as to the breach of guaranty claim against Delp, and thus PNC is entitled to judgment on the pleadings on Count V.

### 2.    Foreclosure Counts (Counts II, III, and IV)

In Count II of the Complaint, PNC brings a mortgage foreclosure claim, and in Counts III and IV it seeks to foreclose security interests in leases and rents (Count III) and in personal property (Count IV). To prevail on such claims, a plaintiff must establish that it holds the note and the security interest and that the terms of the note have been breached. See, e.g., Citibank, N.A. v. Dalessio, 756 F. Supp. 2d 1361, 1365 (M.D. Fla. 2010).

PNC alleged in the Complaint that it is the holder of the note and the security interests, and Delp has not denied those allegations. Additionally, PNC alleged several events of default under the note, including failure to pay, and Delp did not deny those allegations either. All of the allegations pertinent to these claims are deemed admitted by Delp's failure to deny them. PNC is thus entitled to judgment on the pleadings on Counts II, III, and IV against Delp and is entitled to a final judgment of foreclosure of the mortgage and the security interests.

## III.    Motion for Entry of Default Final Judgment (Doc. 26)

### A.    Legal Standards

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." After the clerk enters a default, the claimant may apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2).

However, "a defendant's default does not in itself warrant the court in entering a default judgment." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[4] Instead, "[t]here must be a sufficient basis in the pleadings for the judgment entered," and "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." Id.

### B. Discussion

As an initial matter, the Clerk properly entered defaults against Delphini Industrial, Delphini Construction, and Condo Association (collectively "the Defaulted Defendants"). Each of the Defaulted Defendants was properly served with process, (see Docs. 12, 18, & 19), and each of them failed to respond to the Complaint within twenty-one days from the date of service. See Fed. R. Civ. P. 12(a)(1)(A)(i) (providing that "[a] defendant must serve an answer . . . within 21 days after being served with the summons and complaint").

Additionally, the failure of the Defaulted Defendants to timely respond to the Complaint and the entry of defaults against them serve to admit the well-pleaded allegations of PNC's Complaint, including the allegations of breach of the note by Delphini Industrial, the foreclosure counts against all three of the Defaulted Defendants, and breach of the guaranty by Delphini Construction. As set forth below, there is a sufficient basis in the pleadings for entry of default judgment on each of these counts.

### 1. Breach of Note (Count I) and Breach of Guaranty (Count VI)

In Count I, PNC brings a claim for breach of the 2014 Renewal Note against Delphini Industrial, and in Count VI PNC alleges breach of the 2006, 2008, and 2014 guaranties by

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

7

Delphini Construction. Both of these counts are breach of contract claims, the elements of which are: "(1) a valid contract; (2) a material breach; and (3) damages." Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). "A cause of action for breach of a guaranty agreement arises upon default and a subsequent refusal to pay by the guarantor." Brunswick Corp. v. Creel, 471 So. 2d 617, 619 (Fla. 5th DCA 1985).

PNC has alleged, and Delphini Industrial and Delphini Construction have admitted by their defaults, that PNC holds the loan documents and guaranty agreements at issue, that Delphini Industrial defaulted on the note by failing to make required payments, and that Delphini Construction has defaulted on the guaranty agreements. Additionally, PNC has established, through the Verified Complaint and affidavits, the amounts due under the note and the guaranty agreements. PNC has thus established entitlement to default judgment against Delphini Industrial on Count I of the Complaint and against Delphini Construction on Count VI of the Complaint.

        2.     *Foreclosure Claims (Counts II, III, and IV)*

In Count II of the Complaint, PNC brings a mortgage foreclosure claim against all Defendants, and in Counts III and IV it seeks to foreclose security interests in leases and rents (Count III) and in personal property (Count IV). To prevail on such claims, a plaintiff must establish that it holds the note and the security interest and that the terms of the note have been breached. See, e.g., Citibank, N.A. v. Dalessio, 756 F. Supp. 2d 1361, 1365 (M.D. Fla. 2010).

PNC alleged in the Complaint that it is the holder of the note and the security interests, and by their defaults the Defaulted Defendants have admitted these allegations. Additionally, PNC alleged several events of default under the note, including failure to pay. These allegations also have been admitted by default. PNC is thus entitled to default

8

judgment on Counts II, III, and IV against the Defaulted Defendants and is entitled to a final judgment of foreclosure of the mortgage and the security interests.

IV. **Motion for Appointment of Master to Conduct Foreclosure Sale (Doc. 35) and Motion for Leave to File Original Promissory Note (Doc. 36)**

Plaintiff requests that the Court appoint a special master pursuant to Federal Rule of Civil Procedure 53 to conduct the foreclosure sale. (Doc. 35). The Court declines to appoint a special master. Such an appointment is unnecessary. The United States Marshal can conduct the foreclosure sale.

Plaintiff also seeks leave to file the original promissory note for cancellation by the Clerk. (Doc. 36). This motion is well-taken and shall be granted.

V. **Damages and the Relief Requested**

In its motions, PNC seeks judgment on the pleadings against Delp on Counts II, III, IV, and V; default judgment against Delphini Industrial on Counts I through IV; default judgment against Delphini Construction on Counts II, III, IV, and VI; and default judgment against Condo Association on Counts II, III, and IV. PNC requests entry of a foreclosure judgment on Counts II through IV and asks that the Court reserve jurisdiction to enter a money judgment on the remaining counts for any deficiency due following the foreclosure sale. (See Doc. 25 at 11; Doc. 26 at 11). PNC also seeks to recover its attorneys' fees as provided for in the loan documents. (See Doc. 25 at 11-12; Doc. 26 at 13-14).

In entering a default judgment, a court need not hold an evidentiary hearing "if the damages are liquidated or ascertainable from documentary evidence or affidavits." Shandong Airlines Co., Ltd. v. CAPT, LLC, 650 F. Supp. 2d 1202, 1207 (M.D. Fla. 2009). Here, PNC seeks as damages the amount unpaid under the note and guaranties, including late fees and interest. These damages are liquidated or ascertainable from documentary

9

evidence and affidavits. PNC has shown by affidavits the amounts due on the note and guaranties and the amount of attorneys' fees, expenses, and costs that it claims. These affidavits set forth a sum that can be made certain by computation, and no evidentiary hearing is required to determine damages.

Plaintiff has submitted Affidavits (Docs. 27-1, 32-1, & 34-1), a Bill of Costs (Doc. 33), and a Proposed Judgment (Doc. 30-1) claiming the following amounts owed:

| | |
|---|---|
| Unpaid Principal: | $1,357,606.50 |
| Interest as of 7/7/2015 (accruing at $216.84 per diem) | $   74,893.69 |
| Late Fees | $    1,300.00 |
| Protective Tax Advances | $   47,696.42[5] |
| Environmental Due Diligence | $    4,300.00 |
| Attorneys' Fees as of 6/30/2015 | $   25,735.00 |
| Anticipated Further Attorneys' Fees | $    5,000.00 |
| Legal Fees[6] (through June 30, 2015) | $      623.00 |
| Special Master Fees | $    2,500.00 |
| Costs | $    1,235.00 |
| **TOTAL CLAIMED** (as of 7/7/2015) | **$ 1,520,889.61** |

---

[5] This sum represents $38,249.42 for 2013 and $9,447.00 for 2014. (See Doc. 34-1 at 3-4).

[6] These fees are for a title search ($350.00), recording a notice of lis pendens ($33.00), and a skip trace performed by the process server to locate Defendant Delp ($240.00). (See Doc. 32-1 at 5).

The Court finds that all of these amounts are supported by Plaintiff's submissions except for the $5,000.00 for anticipated further attorneys' fees[7] and the $2500 in fees for the Special Master.[8] Thus, the Court finds that the total amount due Plaintiff as of July 29, 2015, is $1,518,160.09.[9]

## VI. Conclusion

In accordance with the foregoing, it is **ORDERED** as follows:

1. Plaintiff's Motion for Final Judgment on the Pleadings (Doc. 25) is **GRANTED**.

2. Plaintiff's Motion for Entry of Default Final Judgment (Doc. 26) is **GRANTED**.

3. Plaintiff's Motion for Appointment of Master to Conduct Foreclosure Sale (Doc. 35) is **DENIED**.

4. Plaintiff's Motion for Leave to File Original Promissory Note (Doc. 36) is **GRANTED**. Plaintiff is directed to tender the Note to the Clerk of Court for cancellation

---

[7] Plaintiff has established its entitlement to attorneys' fees under the Loan Documents. (See Doc. 25 at 11-12; Doc. 26 at 13-14; Pl.'s Supplemental Mem. Regarding Attorneys' Fees, Legal Expenses, and Costs, Doc. 31). Plaintiff has submitted an Affidavit of Attorneys' Fees and Costs (Doc. 32-1) with attached invoices (Doc. 32-2) detailing the work of attorneys and paralegals on this case. The Court finds the fees claimed for completed work reasonable. However, the $5,000.00 claimed for anticipated additional attorneys' fees "for the resolution of the remaining issues in this case," (see Doc. 32-1 at 2), is speculative. The Court will not award any amount for future attorneys' fees in the foreclosure judgment.

[8] Because the Court declines to appoint a special master, $2500 for the special master's fee is not necessary.

[9] After deducting $7500 for further attorney's fees and special master fees, the Court has added twenty-two days of prejudgment interest at $216.84 per diem—$4,770.48—for a total prejudgment interest amount of $79,664.17. The total will be adjusted as necessary for additional prejudgment interest at the time judgment is entered.

and then to file a written notice that the Note has been tendered. After Plaintiff has filed the notice of tendering, the Court will, by separate document, enter a foreclosure judgment.

**DONE** and **ORDERED** in Orlando, Florida, on July 29, 2015.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties